The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you. Our first case for today is 20-1540 Baggage Airline Guest Services v. Roadie. Mr. Pennington, please proceed. Thank you and may it please the Court. This is an appeal from the District Court's denial of Roadie's motion for fees under 35 U.S.C. 285. Roadie had prevailed when it invalidated the bags patent on a motion for judgment on the pleadings. The patent was declared invalid under 101 for non-patentable subject matter. That invalidation ruling by the District Court was upheld by this Court with a Rule 36 Affirmance about a year ago. After that Affirmance, Roadie went back to the District Court and moved for fees. That fee motion was denied and that is why we are here today on an appeal of that denial. There are a couple of things that stand out in this case that warrant fees. Number one, this case started in July of 2017 and from its inception, it appeared to be motivated by a desire to just drag the case along and keep the defendant in the case as long as possible, even though the plaintiff was confronted with clear evidence of non-infringement. But Counsel, didn't Judge Anders consider those things? I mean, he basically said, look, obviously there were a lot of mistakes that were made by Counsel, but he just viewed those as based on inexperience or as actual mistakes. In other words, he didn't seem to find the intentionality that you alleged he should find. Yes, Your Honor, but that was based on, if you read the opinion accounts of the judge, there were several factors that he failed to include in his decision. And under Optane Fitness, there is a duty of the court to consider the totality of circumstances. And there's also a duty, even though the standard of review is abuse of discretion, there is a duty to get the facts correct. And on the facts, the review is clear error. On the page of the opinion, there is a very clear error in the way the judge saw the evidence before the court. At the top of the sixth page, he says, due to the resolution of the case before any claim construction and before the taking of significant discovery, I cannot say what plaintiff might have been able to prove with regards to infringement. That's just simply not true. The Markman briefing was absolutely completed in the sense that only one term was up for construction. And so the parties had gone through the process of defining what terms needed construction, and it whittled down to just one, this term of selection to hold discovery. Is it your position that in all cases that if a court invalidates a patent or rules in favor of the challenger on one issue, that the court on a fee motion has to then go back and decide the merits of all the other issues? Absolutely not, Your Honor. This case is unique in the following way. That motion that invalidated the patent included a motion for non-infringement. And so that was teed up a long time ago. It wasn't that this was an unbriefed issue. The counsel of the judge didn't construe the claim, unless I'm misremembering. He said, I'll accept the patentee's claim construction for purposes of 101, and even under the patentee's claim construction, the claim would be invalid. So I don't understand. You're saying that there was a factual error by the judge on page 8, and the two things in the sentence you cited are that this case was resolved before claim construction, which it was. He had not construed the claim and, in fact, didn't in the invalidity order. And then the second part is before the taking of significant discovery. Do you have anything you'd like to say about that? Because I don't think that he made any error on claim construction. Well, Your Honor, there was significant discovery, and it's clear from the docket sheet. Had there been expert reports already? Your Honor, as you may know, that comes at the end of discovery. And, in fact, that's a significant point because the plaintiff insisted on getting discovery of my client's source code, and that source code was made available, and they were required to designate an expert to look at it, and they failed to do so. And I think that's consistent with the idea that they wanted to string this case along without spending their resources, but at the same time making us expend our resources. Well, he said that the case was resolved before the taking of significant discovery. The only discovery you mentioned is that you disclosed source code. That's a matter of a single computer file disclosure. There were not even any expert reports. Do you want the district court to assess your infringement case in the absence of any expert report? Your Honor, if you look at the pleadings, our motion for judgment on the pleadings has the impact of a motion to dismiss. You don't need discovery on a motion to dismiss. It's like a 12B6 standard. What we were saying in our original motion for judgment on the pleadings on non-infringement is that they have not alleged enough to make out a claim of infringement. All the other details about claim construction and discovery, first of all, I'll reiterate, we went through extensive interrogatory and document production that cost my client a lot of money, and, in fact, we had filed a motion to stay discovery, which the plaintiff opposed. We wanted it stayed so that the court would consider what it ultimately did consider on the invalidity side. The infringement side was clear as a bell. We had pointed out that we simply don't sell phones and servers, so that knocked out any claim that we infringed the apparatus claims. And then on the method claims, the method requires action of the deliverer and the owner of the luggage, which we don't handle. We don't control. So that was a divided infringement issue. Weren't there still debates on exactly how the communications with drivers work on the RODI app? If you got past the motion for judgment on the pleadings, if you went beyond that, and, for example, if they had amended their complaint, which they never did, they could have maybe gotten around the divided infringement. But that is in the complaint. The complaint is what we have to deal with. What we ended up arguing was, first of all, they went out and said to the judge in Florida that, oh, we can't decide these motions because significant issues exist on claim construction. And then they rattled off eight terms that they said needed to be construed. When we went through claim construction, none of those claim terms carried over into what they said needed to be construed. So, Your Honor, that relates to non-infringement, but it also goes to their litigation posture. But isn't that, you know, first of all, people can change their claim construction positions during the course of a proceeding. Isn't that right? I wouldn't say that they would completely abandon them, Your Honor. And, in fact, when you make an allegation to a federal judge that he cannot decide a motion for judgment on the pleadings because these specific terms need construction, and then a month later you say none of those claim terms need construction, you're misrepresenting something very significant to a federal judge. I'm sorry. Go ahead. But didn't the judge say that, you know, there was difficulty in understanding exactly how the app worked, and so it wasn't a question of being nefarious. It was a question of developing an understanding of what was going on. Your Honor, I think the judge was overly generous in calling this either complicated or hard to understand. What we were talking about there was this selection to hold delivery, and that related to more-it related to non-infringement, but it also related to how the case was litigated by the other side. They used their lead trial counsel to come up with an infringement contention, and so we desperately fought with the other side on the fact that they have, first of all, put their lead counsel in the position as a trial witness, and it clearly showed when he went out and used the app, he used a phone-I'm sorry, a messaging app which is outside the Rody app to rework where a piece of luggage was to go, and that was clearly outside the Rody app. So that's what we were arguing there. The original motion for judgment on the pleadings didn't have any of that. It simply said, look, you've alleged that we sell servers and phones, and we don't, and you've alleged that we do all these method steps that we don't do. This is going to the merits. I mean, the district court recognized that there was a failure to grasp meaningful technological and operational distinctions, as he said, and that mistakes were made. But even recognizing that, he said he didn't find a sufficient nefarious intent, and given our standard of review, how do we disagree with that? Even if we would have, in the first instance, been inclined to award fees, how could we do it given our standard of review? Your Honor, I would have to say that when you look at a case like Senebations v. Payoneer, this was the same court, and in that case the court gave no mulligans to the other side for not doing enough investigation or understanding the technology. And that was in the context of awarding fees against the patent holder, and that's where the court relied very heavily on the argument that if one-on-one comes up at the patent office, the patent owner was trying to say, well, that proves that this is a good case and that we have a strong patent. This court said that actually shows you have a bad case. You will put on notice that your patent is weak. Well, that exact same thing happened in this case, that BAGS argued principally in their motion, in response to our motion, that the patent office approved this over Alice. Counsel, this is Judge Moore. You said in the Senebations case the judge, the same judge as in this case, said that when the patent office rejects something and then allows it, that shows that you have a bad case. Where did he say that in the Senebations case? I'm having trouble finding that holding. Well, I believe it's on page three of the Senebations memorandum, in footnote four. Additionally, section 101 rejects the plaintiff on notice that its claims were of dubious patentability. That's where the same judge, why didn't that work in our favor in this case, if it's the same judge? Then the only other thing that was relied on in Senebations was the argument or the position taken by the court that the patent in suit was like patents that were invalidated under Alice, or like Alice. What was Alice? There's no real analysis in the framework of the memorandum. You have to go to Alice. What you'll see is that the patent there relied on conventional computers and computing to do things that humans did just to do them faster and more accurately. But counsel, you rely on the Senebations case. In the same case, the same judge said, or in that case, the same judge said, I have rarely been more confident in the patent ineligibility of a set of claims or more confident in the unreasonableness of a plaintiff's decision to sue on a patent. He had a very strong reaction in the Senebations case to both the ineligibility and the plaintiff's decision to sue, i.e., the intent to sue on negative claims. That case was less than a year before your case. Your case then comes along, and he says, yeah, these claims are ineligible, but I'm not sure what would have come and what the plaintiff would have argued on infringement. And he says, and I also don't really attribute nefarious intent to them. I think they're just inexperienced and ill-informed. The same judge had these two cases in front of him at almost the identical time, and he writes these two different opinions, and you somehow think that we should take the Senebations case and reach the same holding on yours? I mean, I don't understand your challenge of what this judge did in this case. Your Honor, the Senebations case is one aspect of our appeal, but I would say this. The judge didn't explain or give any detail about why he felt so badly about this patent. He just gave an opinion that he said, oh, this is a bad case, and, in fact, he said plaintiff's defense of the validity of the 755 patent was not just mediocre or bad. It was ugly, but he didn't say how it was ugly. Counsel, let me ask you one more question. I think your time is just about up, but let me ask you one more question. Are you suggesting that the fact that we ruled 36th this case is somehow indicative of its frivolity? You know what, Your Honor? Your Honor, I think that the fact that there was no analysis necessary, I think it's a factor. I wouldn't say it's determinative, but I will say that on Octane Fitness, you do have to look at the totality of circumstances. But I just want to make sure I understand your argument in your blue brief. Is the argument in your blue brief that when we rule 36th a case, it tends to prove the frivolity of the case or it tends to prove the exceptionality of the case? You suggest in your brief that it is a factor that favors you. Is that correct? Your Honor, I would say so, and it's based on my experience of reviewing cases like this. How many cases do you think we rule 36th in a year? What percentage of cases do you think we rule 36th in a year? Your Honor, a lot. And I think sometimes the Rule 36 decisions are on pretty weak cases. So I wouldn't say it's across the board, but I definitely believe that this was a weak case on their side. And, Your Honor, I'm not sure how much time I'm eating into my rebuttal, but I'll pass at this point to save rebuttal time. I think I heard a beep anyway. Mr. Stein, go ahead. Good morning, Your Honors. May it please the Court. Octane Fitness held that an exceptional case under 285 is one that stands out from others with respect to the substantive strength of the party's litigating position or two, with the unreasonable manner in which the case was litigated. In our case, with regard to the substantive strength, while Judge Andrews ultimately found the claims in this case to be directed to an abstract idea and containing no inventive step, he nevertheless found that this case was not, quote, exceptionally meritless. Counsel, is it your position that the judge was right, that it was just sloppy lawyering on your part? Well, I might dispute that comment myself, but yes. Well, you filed twice in the wrong district, right? I mean, just from the very beginning, there were a lot of procedural missteps, right? Well, the first Florida case that ended up being assigned to Judge Dalton was filed out of our Orlando office, and it was filed at the time when the ownership of the patent was trying to be cleaned up and, in fact, the complaint was not even served. But then you file a second suit and you don't dismiss the first one. You make them file a motion to dismiss the first one. You make them file a motion to transfer. I mean, it really was a mess. Well, I think what I had done, Your Honor, was I tried to consolidate the two because the first case was properly dismissed for lack of standing because the record showed that the plaintiff did not own the patent, and there was nothing... Right, which is sloppy in itself, right? There was nothing I could do about that. So I had to file the second case and try to consolidate the two so that if you look, for example, in a case some years ago, out south, there's no way to fix a standing issue of that nature. You cannot amend a complaint. You have to refile. Yeah, so why didn't you just dismiss the first complaint? Well, because I was trying to consolidate it. Okay, so what... And keep it with the same judge. So, all right, keep it with the same judge in a district where you already knew that it was likely it shouldn't have been filed. No, at the time, that many years ago, there was considerable legal precedent going both ways with regard to whether you had to have a brick-and-mortar establishment in order to approve venue under 28 U.S.C. 1400B after 1391C got wiped out. As applied to patent cases. And at that time, we had submitted evidence before Judge Dalton to the effect that Rhodey had an established place of business at the Orlando International Airport. And we had submitted, it's been a while, but I believe we had submitted copies of contracts. Well, should the district court have considered all the procedural missteps that occurred in Florida before it even got to the court? Your Honor, I'm not sure I understood the context of that question. Well, wouldn't the totality of circumstances include everything that occurred in the case, including things that occurred before transfer? Well, the docket in the Judge Dalton case, you will see that Rhodey had pursued a 285 motion in that case as well, and Judge Dalton denied it. So that had already been adjudicated, and of course there was no appeal. So once Judge Dalton denied their 285 motion in their case, in the first Florida case, as we're calling it, then the second Florida case, which is the one that I filed, it proceeded on a normal course of activity. What evolved after that was there was a motion for a change of venue, and from that we wound up in Delaware, because the judge did not agree with whether the contract that we had submitted with the Orlando International Authority was sufficient under the recent authority to establish a regular and established place of business at the airport. And so we wound up in Delaware. Can you address the question or the argument that your failure to file an amended corporate disclosure statement, even though you were acquired by a larger company during litigation itself, is evidence of nefarious intent? Yes, let me address that. There was no nefarious intent. The acquisition negotiations had been pending for a long time. I'm not quite sure, personally, I'm not quite sure when they started. And I know that there was a press release that announced the merger. It came in the fall of 2018. At that time, the one-on-one hearing had been scheduled for, initially it was in late November, and then later it was changed to the first week of December. So since I'm not a merger and acquisition attorney, so I was not precisely aware of when that merger was done or what the nuances would have been. My involvement was limited to the extent of providing copies of pleadings to the attorneys for the acquiring company. Yeah, but it's your obligation to make sure that your corporate disclosure statements are up to date. So why wouldn't you have at least asked that question of the M&A attorneys? I think it was happening at a time when it just didn't come to mind, quite frankly. All right. And what about the fact that you said there were multiple terms that needed to be construed before any resolution could occur, and then you turned around and said, well, it was really only one term? How is that not evidence of some effort to delay? Well, all of that is correct. When we listed the claim terms that we thought would need interpretation, we did so in good faith, and we came up with those eight terms that we thought we would be arguing about. And as it turns out, we exchanged disputed claim terms. We had I don't know how many meet and confers over claim terms, and fortunately, we resolved the claim terms to the point that we only had one left that was in dispute, which was the selection to hold the delivery. So my experience has been that, sure, if you don't list disputed claim terms, then they don't become part of the markman process from the very beginning, but hopefully through cooperation between opposing counsel, you get to the point where you resolve many of the disputes, maybe even all of them. In our case, we resolved all the disputes except for one. So there was nothing nefarious about that. It followed the scheduling order that had been entered in the case on a timely basis, and all of that was done very properly. The fact is, as was noted earlier, Judge Andrews only addressed the disputed claim term of selection to hold delivery, not from the standpoint of infringement, but from the standpoint of invalidity, as you noted. What about the whole thing of injecting counsel into the case by using the app and using that as evidence in the case? That's pretty odd, isn't it? Well, in the context of an app, before suit is filed, when I got the case, I obviously had downloaded the app, and just like you would go to the store and buy a ceiling fan, if you're getting a patent on a ceiling fan, you'd buy the ceiling fan, and then you use it. And that's exactly what I did. I could tell before I filed the case that I knew that the dispute was going to fall down to selection to hold delivery. And so I had a package shipped from my office to my house. But then you used that as evidence. I mean, it's one thing to do your own research, but quite another to say that your own research constitutes evidence in the case. Well, I think what we were confronted with, Your Honor, was the fact that Rody was denying things that were facially untrue. For example, the phone number that has prompted a lot of briefing. There's no way from using the app can you contact the Rody driver except through the Rody server. When you use the app, there's no way to contact the driver directly because you don't know his or her phone number. So you have to use the functionality of the Rody app, which inherently means that it goes through the Rody server, wherever it may be located, in order to get in touch with the Rody driver. Then after that initial contact is made, then the Rody driver can use your standard iPhone messaging app to communicate. I still don't understand how that has anything to do with you being, inserting yourself into the case as a witness. I wasn't thinking that I was made a witness. I was thinking that I was doing a very thorough pre-filing investigation. I have never thought, and I don't believe today, that buying or obtaining access to an allegedly infringing product and using it or testing it before you file suit is a bad thing. I actually think that's a good thing. Mr. Stein, this is Judge Toronto. Can I ask you a question, I guess, on the substantive strength aspect of these ruling here? There's something a little bit conclusory about the statements that this claim was somehow less weak than the claim in Finnovation. Can you help me get beyond the conclusion and give me your thoughts about why, at a substantive level, the claims here presented a stronger case for eligibility than the claim in Finnovation? Well, Your Honor, if you recall, during the argument on the 101 motion, we had discussed that. Also, I had discussed that with Judge Andrews during the hearing on the 101 motion. As all of the 101 cases go, if you define the abstract idea broadly enough, then everything is preempted, is patent ineligible. Here, Rody had been urging that the abstract idea was the delivery of lost baggage to a passenger. I was asked by Judge Andrews, as well as, I believe I argued during the Federal Circuit argument, that what is conventional or not conventional was not in the record at all, other than the fact that, yes, we all have been able to pick up the phone and try to call the airline when your luggage is lost. I even made a comment to the fact that there's movies made, like Meet the Fockers, of all the hilarious situations you can get into when you try to recover lost luggage from the airline. But other than that comment that I made, which was the truth, there was no process, there was no functionality that was available to passengers to recover lost luggage, except for the bags app. And so we were arguing that the abstract idea was being defined too broadly, because in practice, picking up the phone and calling the airline company just didn't work very well. Okay, counsel, I think your time is up. Why don't we go ahead and have rebuttal from Mr. Pennington. Go ahead, Mr. Pennington, I'll restore your three minutes. You can use as much as you need. Thank you, Your Honor. First of all, on the questions about the initial filing of a suit before the one that we're on appeal on, if you go to the district court's order on the fee motion, he starts right out, page one, under background. He says, on August 24, 2017, plaintiff filed suit against defendant. He makes no mention whatsoever of the prior lawsuit that we had to defend that was filed in July of the same year. And as far as I recall, Your Honor, all of this, let me just say that T.C. Hartland was already in place when that suit was filed. So when we had to fight the venue issues, it was on a motion to dismiss. And in the second suit, when it was granted, if you read the opinion, the judge says, I'm granting the motion, which was a motion for improper venue. But then he said, and I'm transferring it to Delaware. What he did was he short-circuited the necessity of filing new suit and just shipped this one up there. But on the issue of that first suit, we had to brief that, and we had to fight it. We had to move to dismiss, and that motion was granted. Mr. Stein, I think, said that he didn't believe we were served in that suit, but I'm pretty sure we were because we filed a motion to dismiss, and you don't file motions to dismiss without being served. There was also a quirk in that suit that they included a state law claim of unfair competition based on infringing a patent. So we had to move to dismiss that based on preemption. That claim, as crazy as it sounds, would have been preempted by the federal patent statute. So when they refiled the second suit, they did not include that state law claim, and that was a Florida state law claim. So starting in the very beginning, we had to work like crazy to get rid of this suit, and this was at a time when my client was in startup mode. They were raising money. They're trying to become a company, whereas the plaintiff was an established company. And, frankly, from what I heard Mr. Stein say, I have to take real issue with the fact that they never filed an updated Rule 7 corporate disclosure statement in Delaware, and to this day they haven't. In the federal circuit, they filed one that identifies the purchasing party, but at the time that this case was going on, the logic here is this. If you're trying to sell the company and you tell the buyer, hey, I've got a monopoly on this business because of my patent, and I'm suing people who are infringing my patent. Well, if all of a sudden the patent is declared invalid, then that goes right out the window, and maybe your valuation goes down. So one incentive for them to keep this thing going is to continue to say to the purchaser that, hey, we have a monopoly. We've got a great patent. They're infringing. We're going to put everybody out of business who tries to do what we do, and that's the incentive. There could have been discovery that could have shed light on that. There could have been communications between the acquiring company and BAGS that could have reflected their true intent, but because it was never disclosed, we didn't have an opportunity to seek discovery on that, nor did the district court have an opportunity to determine whether or not he had a conflict. So that never – I have to say, when you look at the totality of circumstances, I like to think that all the federal rules are important, not just the ones that are dispositive. But let's not forget that Rule 7 is a federal rule of civil procedure, and they to this day have not updated their corporate disclosure in Delaware. And why would that be? I would say that they were trying to sell this company for as much as they could, and they did not want an adverse ruling on this patent. They wanted to keep it going as long as they could. That's all I have, Your Honor. All right. I thank both counsel. The case is taken under submission. That ends our proceedings for today. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.